UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUHUA YANG,<br>Petitioner,<br>v.<br>POLLY KAISER, et al.,<br>Respondents. | No. 2:25-cv-02205-DAD-AC (HC)<br><br><u>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER IN PART</u><br><br>(Doc. No. 4) |

This matter came before the court on August 19, 2025 for hearing on plaintiff's motion for temporary restraining order. (Doc. No. 15.) Attorney Christine Raymond appeared by Zoom on behalf of petitioner. Assistant United States Attorney Dhruv Sharma appeared by Zoom on behalf of respondents. For the reasons explained below, plaintiff's motion for a temporary restraining order will be granted in part.

**BACKGROUND**

On August 7, 2025, petitioner Yuhua Yang filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Petitioner Yang asserts the following five claims in that petition: (1) unlawful re-detention constituting an arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(a)(2)(A); (2) violation

of the procedures for revocation of release set out in 8 C.F.R. § 241.13(i)(3); (3) violation of the Immigration and Nationality Act of 1952 ("INA"); (4) failure to provide a pre-deprivation of liberty hearing in violation of the Fifth Amendment; (5) indefinite detention in violation of the Fifth Amendment; and (6) failure to provide adequate procedures regarding third country removal in violation of the Fifth Amendment. (*Id.* at ¶¶ 88–117.) In support of the pending motion for temporary restraining order, petitioner presents evidence of the following.

Petitioner was born in China in 1974 before entering the United States in approximately 1995, around the age of 21. (Doc. Nos. 1 at ¶ 1; 1-1 at ¶ 2.) In 2009, petitioner was convicted of violating California Health and Safety Code § 11351. (Doc. Nos. 1 at ¶ 5 n.3; 1-1 at ¶ 3.) Petitioner was thereafter sentenced and served approximately eight years in a California state prison. (*Id.*) In December 2017, petitioner was released from incarceration and was detained by ICE. (Doc. Nos. 1 at ¶ 5; 1-1 at ¶ 4.) Petitioner was not placed in standard removal proceedings but was instead issued an administrative removal order under INA § 238(b).[1] (*Id.*) Petitioner remained in ICE detention until July 2018, and while detained submitted to China an application for issuance of a travel document to that country. (Doc. Nos. 1 at ¶ 6; 1-1 at ¶ 5.) Petitioner was released from ICE custody in 2018 once "it became apparent that China would not issue him the travel document" and was placed under a Form I-220B, Order of Supervision ("OSUP") issued by ICE. (Doc. Nos. 1 at ¶¶ 6, 7; 1-1 at ¶¶ 5, 6.) The OSUP permitted petitioner's continued release on the basis that his removal to China was not reasonably foreseeable and he was not otherwise found to be a flight risk or danger to the community. (Doc. Nos. 1 at ¶ 7; 1-1 at ¶ 6.) The OSUP required petitioner to attend regular appointments at the ICE offices in San Francisco. (*Id.*)

Petitioner alleges that, since his release in July 2018, he has fully complied with the terms of his OSUP. (Doc. No. 1 at ¶ 8.) Following his release, petitioner obtained a work authorization document and has been employed at a local food market in order to support himself and his family. (Doc. Nos. 1 at ¶ 8; 1-1 at ¶ 7.) Over the past seven years, petitioner has repeatedly

---

[1] "Expedited removal proceedings for non-citizens convicted of committing aggravated felonies are a creation of INA § 242A(b), later redesignated as INA § 238(b) and currently codified at 8 U.S.C. § 1228(b)." *Zuniga v. Barr*, 946 F.3d 464, 468 (9th Cir. 2019).

applied for a travel document to China but has been unable to acquire one because the "Chinese government has historically not accepted deportees from the United States[.]" (Doc. No. 1-1 at ¶ 8) (emphasis removed).

On June 3, 2025, petitioner attended an appointment at the San Francisco offices of ICE at which time he was detained.[2] (Doc. Nos. 1 at ¶ 10; 1-1 at ¶ 9.) Petitioner remains detained by ICE at the Golden State Annex ICE Detention Center in McFarland, California. (Doc. No. 1 at ¶¶ 10, 17.) Petitioner states that he was not provided with notice of his detention prior to attending his scheduled appointment and has not since been provided with an explanation for his re-detention. (Doc Nos. 1 at ¶ 10; 1-1 at ¶ 10.) Petitioner asserts that the failure to provide him such notice or an opportunity to be heard regarding re-detention violated his right to due process. (Doc. No. 1 at ¶¶ 11, 42.)

On August 8, 2025, petitioner filed the pending motion for temporary restraining order. (Doc. No. 4.) In that motion, petitioner requests that the court order his immediate release from custody and enjoin respondents from re-detaining him absent notice and a hearing before an immigration judge.[3] (*Id.* at 35.) On August 8, 2025, the court directed petitioner's counsel to serve respondents with a copy of the petition, the motion for temporary restraining order, and accompanying papers, and set a briefing schedule on the pending motion. (Doc. No. 8.) Pursuant to a stipulation by the parties, on August 11, 2025, the court modified the briefing schedule and set a hearing for August 19, 2025. (Doc. Nos. 10, 11.) On August 14, 2025, respondents filed

/////

---

[2] During the August 19 hearing, petitioner represented that his delay in filing this action and the pending motion for temporary restraining order was because his family had only contacted and retained counsel approximately two weeks before the hearing.

[3] Petitioner also requests that this court order respondents "refrain from removing him to any third country without first providing him with constitutionally-compliant procedures." (Doc. No. 4 at 35.) At the hearing, the court inquired whether third country removal was being contemplated for petitioner. Respondents maintained that there is no evidence before the court suggesting that petitioner will be subject to third country removal. The court recognizes the concerns expressed by petitioner's counsel in light of the lack of information provided by the government as to the nature of any possible changed circumstance. Nonetheless, the court concludes that the issuance of an injunction pertaining to third country removal is not supported at this time because that issue is not presently before the court.

their opposition to the pending motion and petitioner filed his reply thereto on August 18, 2025. (Doc. Nos. 13, 14.)

**LEGAL STANDARD**

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of

/////

demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

## DISCUSSION

### A. Likelihood of Success on the Merits

1. Jurisdiction

Respondents argue that this court lacks jurisdiction to grant a temporary restraining order "[t]o the extent the TRO seeks to prevent Petitioner's removal[.]" (Doc. No. 13 at 8.) Respondents state that 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." (Doc. No. 13 at 8); *see* 8 U.S.C. § 1252(g). Respondents appear to assert that this prohibition also prevents the court from ordering that petitioner be released from custody because it would "forestall removal[.]" (*Id.*)

"The Ninth Circuit has held consistently that Section 1252(g) should be interpreted narrowly." *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)). "The focus of Section 1252(g) is to limit 'judicial constraints upon prosecutorial discretion.'" *Id.* "By contrast, Section 1252(g) does not divest courts of jurisdiction over cases that do not address prosecutorial discretion and address 'a purely legal question, which does not challenge the Attorney General's discretionary authority[.]'" *Id.* The Supreme Court has "indicated that the reference to 'execut[ing] removal orders' appearing in that provision should be interpreted narrowly, and not as referring to the underlying merits of the removal decision." *Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482–87 (1999)).

Here, petitioner does not request a stay of removal nor does he challenge his removal order. Rather, petitioner merely requests an order that he be released from custody and requiring that he is "afforded notice and a hearing before an Immigration Judge on whether his re-detention is not indefinite[.]" (Doc. No. 4 at 35.) Petitioner's claims do not challenge his final removal

order but only his re-detention and such claims are not barred by § 1252(g). *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *1 n.1 (E.D. Cal. July 14, 2025) ("Here, however, the basis of Petitioner's claim is not a challenge to a removal but rather, that his redetention is unconstitutional. As such, § 1252(g) is inapplicable[.]"); *see also Nak Kim Chhoeun v. Marin*, No. 17-cv-01898-CJC-GJS, 2018 WL 1941756, at *4 (C.D. Cal. Mar. 26, 2018) (finding that § 1252(g) does not bar federal court jurisdiction over due process challenges to a petitioner's re-detention).[4] Accordingly, because petitioner is not challenging his removal order, § 1252(g) does not bar the court from exercising subject matter jurisdiction in this matter.

2. Revocation of Release

Petitioner argues that he is likely to prevail on his claim that his re-detention was unlawful based both on constitutional and statutory grounds. (Doc. No. 4 at 14–27.) Specifically, petitioner contends that: (1) his re-detention amounts to indefinite detention and is therefore unconstitutional; (2) his re-detention did not conform to the requirements of 8 C.F.R. § 241.13(i) and was therefore not statutorily authorized; and (3) he was entitled to greater due process prior to

---

[4] The court has noted it will deny petitioner's request for an order enjoining respondents from removing him to a third country without certain due process protections. Nevertheless, because respondents argue that the jurisdictional prohibition in § 1252(g) applies to due process challenges regarding future third country removal (Doc. No. 13 at 8), the court observes that several courts have rejected this argument. Other courts have similarly concluded that challenging removal to a third country without a valid removal order to that third country is not barred by § 1252(g). *See, e.g.*, *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) (finding that § 1252(g) did not bar jurisdiction where petitioner was challenging "removal to a third country *without* a removal order there, or his indefinite detention while the Government seeks a third-country removal order"); *see also J.R. v. Bostock*, No. 2:25-cv-01161-JNW, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025) (finding that § 1252(g) did not bar the plaintiff's claims because he was not challenging a removal order but instead challenging his removal to a third country); *Arostegui-Maldonado v. Baltazar*, — F. Supp. 3d —, 2025 WL 2280357, at *13 (D. Colo. Aug. 8, 2025) ("Accordingly, even assuming Respondents are correct that § 152(g) would prevent the Court from enjoining Maldonado's removal full stop, it does not preclude it from fashioning the narrow relief that Maldonado seeks here: an injunction requiring Respondents to adhere to their *non-discretionary* obligation to provide Maldonado with notice and an opportunity to seek withholding of removal before he is deported to any third country."); *see generally Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005–06 (W.D. Wash. 2019) (finding that the district court had jurisdiction over the petitioner's claim because he challenged the designation of a third country of removal without a requisite reopening of removal proceedings).

any re-detention. (*Id.*) Respondents counter that ICE determined "on account of changed circumstances," petitioner was likely to be removed in the reasonably foreseeable future. (Doc. No. 13 at 4–5.) The court turns to address petitioner's first two arguments below.[5]

"The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal." *Phan v. Becerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal. July 16, 2025). "Certain noncitizens ordered removed may be detained beyond the 90-day removal period, including, *inter alia*, those who are removable under 8 U.S.C. § 1227(a)(2) for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal." *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *3 (C.D. Cal. June 25, 2025). Nevertheless, "[a] noncitizen may only be held in confinement until 'it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Vlasov v. Bondi*, No. 25-cv-01342-AJB-MSB, 2025 WL 2258582, at *2 (S.D. Cal. Aug. 7, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)).

"The Supreme Court read an implicit limitation into the statute in light of the Constitution's demands, holding that § 1231(a)(6) does not authorize indefinite detention and limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-cv-00998-EPG (HC), 2025 WL 1158841, at *4 (E.D. Cal. Apr. 21, 2025) (internal quotation marks omitted) (quoting *Zadvydas*, 533 U.S. at 689). "A six-month period of detention is presumptively reasonable." *Vlasov*, 2025 WL 2258582, at *2. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

[5] Below, the court will address petitioner's third argument in support of his claim that his re-detention was unlawful in connection with its consideration of petitioner's request that the court's order require notice and a pre-detention hearing before an immigration judge prior to any future revocation of his release.

As another judge of this court has recently acknowledged:

> Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."

*Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). Specifically, 8 C.F.R. § 241.13(i)(3) provides for the procedures to be followed upon the revocation of release:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

Further, when ICE revokes a non-citizen's supervised release based on a finding of changed circumstances, the court must review that finding in light of the factors set out in 8 C.F.R. § 241.13(f), which include, among other things, the reasonably foreseeable results of the government's and the non-citizen's efforts towards removal and the history of the non-citizen's efforts to comply with the order of removal. *Hoac*, 2025 WL 1993771, at *3 (citing *Nguyen v. Hyde*, — F. Supp. 3d —, 2025 WL 1725791, at *3 (D. Mass. June 20, 2025) ("To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination.")).

At the August 19 hearing, the court inquired whether an informal interview was conducted in this case as required under the governing regulations. Respondents represented that they were unaware of any informal interview taking place. Accordingly, the court finds that respondents have failed to comply with the requirements of 8 C.F.R. § 241.13(i)(3) as detailed above. Of

course, "[g]overnment agencies are required to follow their own regulations. . . . Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioner is likely to succeed on his claim that his re-detainment was unlawful." *Hoac*, 2025 WL 1993771, at *4 (citing *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Respondents argued that this failure to provide petitioner an informal interview would appropriately be remedied by the court ordering ICE to provide the required informal interview, rather than the issuance of an order that petitioner be released. The court finds the government's argument to be unpersuasive particularly under the facts of this case. Here, petitioner was unable to procure counsel to assist in the filing of a habeas petition on his behalf for two months and the failure to provide an informal interview during that lengthy period of time renders petitioner's re-detention unlawful. *See Ceesay v. Kurzdorfer*, — F. Supp. 3d —, 2025 WL 1284720, at *21 (W.D.N.Y. May 2, 2025) ("In sum, because ICE did not follow its own regulations in deciding to re-detain Ceesay [without providing an informal interview], his due process rights were violated, and he is entitled to release.").

Nevertheless, despite making the determination that the failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested preliminary relief, the court will address below whether petitioner has also shown that his removal is not reasonably foreseeable and whether respondents have offered evidence of a change in circumstances since petitioner's release sufficient to rebut this showing.

As noted above, petitioner has submitted a declaration from his attorney, Zachary Nightingale, in which Attorney Nightingale states that petitioner was detained for approximately eight months in ICE custody, from December 2017 to July 2018. (Doc. No. 1-1 at ¶ 5.) Petitioner also represents that he has complied with his supervised release and respondents do not challenge that representation. (*Id.* at ¶ 7); *see Ortega*, 2025 WL 2243616, at *7 (finding that the petitioner's detention was not reasonably necessary to secure his removal because the petitioner had complied with requirements of supervised release on bond). Petitioner has applied for travel documents to China, the country he has been ordered removed to, several times since 2018 but has been unable to procure such travel authorization. (*Id.* at ¶ 8.) Petitioner represents that the

Chinese government has not historically accepted deportees from the United States. (*Id.*) Because petitioner has been held in custody for more than six months and has provided good reason to believe that, despite his efforts, his removal is not reasonably foreseeable, the burden shifts to "the government to 'respond with evidence sufficient to rebut that showing.'" *Nguyen v. Scott*, No. 2:25-cv-01398-TMC, 2025 WL 2165995, at *7 (W.D. Wash. July 30, 2025) (quoting *Zadvydas*, 533 U.S. at 701). In this regard, petitioner contends that respondents have failed to "established that circumstances have changed regarding the foreseeability of his removal[.]" (Doc. No. 4 at 16); *see also Hoac*, 2025 WL 1993771, at *4 (finding that the petitioner was likely to succeed on his claim that his re-detention violated 8 C.F.R. § 241.13(i) because the respondents failed to show changed circumstances regarding foreseeability of the petitioner's removal).

Respondents argue there has been a change in circumstances justifying petitioner's re-detention for removal in the reasonably foreseeable future. (Doc. No. 13 at 5.) In support of this contention, however, respondents cites only a "Notice of Revocation of Release" which states that the decision to revoke petitioner's release was "made based on a review of your file and/or your personal interview on account of changed circumstances in your case." (Doc. No. 13-1 at 52.) Even if the completely conclusory statement of an ICE officer in this form was evidence of changed circumstances, this notice clearly fails to reflect consideration of any of the required factors under 8 C.F.R. § 241.13(f). *See Nguyen*, 2025 WL 1725791, at *3–5 (noting that ICE's individualized determination of the foreseeability of the petitioner's removal was largely conclusory and failed to abide by its own regulations). As noted, "[g]overnment agencies are required to follow their own regulations." *Hoac*, 2025 WL 1993771, at *4 (citing *Accardi*, 347 U.S. at 268). Because respondents have made no showing that they have engaged in an individualized determination that included consideration of the factors listed in 8 C.F.R. § 241.13(f), they cannot demonstrate changed circumstances with respect to the foreseeability of petitioner's removal.

Respondents appear to alternatively argue that there has been a change in circumstances regarding removals to China because in June a charter flight reportedly carried out the removal of 122 deportees from the United States to China. (Doc. No. 13 at 2.) In support of this contention,

respondents cite only news reports about that flight. (*Id.*) However, petitioner has cited to the court multiple Congressional reports and news articles regarding the Chinese government's reluctance to accept deportees from the United States and the designation of China as a "recalcitrant country"—a country that "systematically refuse[s] or delay[s] the repatriation of their citizens[.]" (Doc. No. 4 at 9.) Moreover, respondents do not contest that petitioner has attempted for multiple years to secure travel documents to facilitate his return to China, which supports his contention that it is unlikely that he will be removed in the foreseeable future, nor do respondents identify any actions they have taken to make petitioner's removal more likely. *See Chun Yat Ma v. Asher*, No. 11-cv-01797-MJP, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012) ("An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely."); *Liu v. Carter*, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely). Respondents' citation to an isolated reported instance of the Chinese government accepting deportees does not, by itself, demonstrate changed circumstances regarding petitioner in particular. *See Phan*, 2025 WL 1993735, at *4 (finding that the isolated recent repatriation of a person to Vietnam did not demonstrate that the petitioner was likely to be removed to Vietnam in the near future).

In summary, the court finds that petitioner has shown that respondents likely did not provide an informal interview as required by 8 C.F.R. § 241(i)(3). The court finds that petitioner has also shown that it is likely that there is no change in circumstances that will allow his removal to China in the reasonably foreseeable future as required by 8 C.F.R. § 241(i)(2) in order to justify his re-detention. In addition, petitioner has established that it is likely that his re-detention would be indefinite because he has demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future and that respondents have failed to rebut this showing. *See Ortega*, 2025 WL 2243616, at *7 (finding that the petitioner had offered sufficient facts to show that his detention would be indefinite because there was no significant likelihood of removal).

Accordingly, consideration of petitioner's showing as to the likelihood of his success on the merits weighs in favor of granting the pending motion for a temporary restraining order.

3. Future Re-Detention

Respondents argue that, if the court should order that petitioner be released, that his request for a "pre-deprivation hearing" prior to any future re-detention should nonetheless be denied. (Doc. No. 13 at 5–6.) Specifically, respondents contend that such relief would interfere with the Executive Branch's operations. (*Id.* at 6.) Petitioner argues that due process requires that he be provided with notice and a hearing before an immigration judge as a neutral adjudicator prior to his future re-detention.[6] (Doc. Nos. 4 at 10; 14 at 14.)

The court first observes that the applicable regulatory framework provides some post-detention administrative process, such as an initial informal interview and, should the non-citizen remain in custody following such interview, an internal records review which is to "include an evaluation of any contested facts" and that is expected to occur "within approximately three months after release is revoked." *See* 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(3). This framework provides "no opportunity to have a neutral party evaluate ICE's unilateral determination of the contested facts." *Guillermo M.R. v. Kaiser*, — F. Supp. 3d —, 2025 WL 1983677, at *7 (N.D. Cal. July 17, 2025). Petitioner argues in his reply that "ICE's regulatory authority to unilaterally re-detain [petitioner] is proscribed by the Due Process Clause" and that due process requires review by a neutral adjudicator. (Doc. No. 14 at 12.)

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause

[6] Though petitioner's moving papers refer intermittently to his request for an order requiring a pre-detention hearing before a "neutral adjudicator," petitioner clarified at the August 19 hearing that he seeks a pre-detention hearing before an immigration judge. (*See, e.g.*, Doc. No. 4 at 10.)

protects." *Id.* at 690. "Courts analyze procedural due process claims in two steps: [T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia*, 2025 WL 1927596, at *2 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Here, respondents concede that petitioner has a liberty interest in his continued release. (Doc. No. 13 at 6–7.) Accordingly, the court considers what procedures are appropriate to prevent erroneous deprivation of that interest. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond. . . . Given the civil context, his liberty interest is arguably greater than the interest of parolees in *Morrissey*.") (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *Guillermo M.R.*, 2025 WL 1983677, at *4 ("Petitioner has a liberty interest in his continued release on bond.").

"Due process 'is a flexible concept that varies with the particular situation.'" *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *6 (E.D. Cal. July 11, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). The Supreme Court identified three factors that the court must consider in determining what process is constitutionally required: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, the court finds that petitioner has a strong private interest in his continued release. As noted above, petitioner was released in 2018 prior to being re-detained in 2025, during which time he was employed and living with his family. The length of time he was on supervised release, as well as petitioner's ties to his community, strengthen petitioner's interest in his continued release. *Doe v. Becerra*, — F. Supp. 3d —, 2025 WL 691664, at *5 (E.D. Cal. 2025) ("Moreover, the actions of the Government in allowing Petitioner to remain in the

community for over five years strengthen Petitioner's liberty interest. Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."); *see also Garcia*, 2025 WL 1927596, at *4 ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Respondents contend that petitioner's liberty interest is diminished because he is subject to a final removal order. (Doc. No. 13 at 7.) However, in the case cited by respondents in support of this proposition—*Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011)—the Ninth Circuit found only that "at the margin" such detainees may "have a lesser liberty interest" but that "[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." 634 F.3d at 1086–87, *abrogation on other grounds recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Indeed, in *Diouf*, the Ninth Circuit recognized that a petitioner held for more than six months by immigration authorities was in grave danger of being erroneously deprived of their liberty without a bond hearing in front of an immigration judge:

> When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one.
>
> Diouf's own case illustrates why a hearing before an immigration judge is a basic safeguard for aliens facing prolonged detention under § 1231(a)(6). The government detained Diouf in March 2005. DHS conducted custody reviews under § 241.4 in July 2005 and July 2006. In both instances, DHS determined that Diouf should remain in custody pending removal because his "criminal history and lack of family support" suggested he might flee if released. In February 2007, however, an immigration judge determined that Diouf was *not* a flight risk and released him on bond. If the district court had not ordered the bond hearing on due process grounds, Diouf might have remained in detention until this day.

*Diouf*, 634 F.3d at 1080–81. The court therefore rejects respondents' argument in this regard.

As to the second *Eldridge* factor, petitioner maintains that without the additional protection of a pre-detention hearing before an immigration judge, there is a high risk of erroneous deprivation of his important liberty interest. (Doc. No. 4 at 26–27.) Petitioner argues

that ICE can "simply re-detain him at any point" based on the procedures described in 8 C.F.R. §§ 241.13, 241.4. (*Id.*) Respondents do not meaningfully respond to this argument, contending only that the minimal and unilateral process provided in 8 C.F.R. §§ 241.13, 241.4 is sufficient to protect petitioner's liberty interests. (Doc. No. 13 at 7.) The court has already concluded, however, that respondents have failed to provide the informal interview required under the governing regulations. This fact suggests that the procedures created by the regulatory framework have proven insufficient to meaningfully mitigate the risk of erroneous deprivation of liberty in this case. *See Garcia*, 2025 WL 1927596, at *5 (finding that the failure to provide the petitioner with the minimal process required supported a finding that the risk of erroneous deprivation without a hearing was high); *see also Singh*, 2025 WL 1918679, at *7 ("Petitioner has not since been provided any procedural safeguards to determine whether his detention is justified. Thus, the probable value of additional procedural safeguards, i.e., a bond hearing is high.") (internal quotation marks omitted). The court therefore rejects respondents' contention that the regulatory framework sufficiently mitigates the risk of an erroneous deprivation of petitioner's liberty interest.

Moreover, "[t]he lack of any neutral review [pursuant to 8 C.F.R. § 241.4] creates a heightened risk of deprivation for Petitioner." *Guillermo M.R.*, 2025 WL 1983677, at *7; *see also Bonnar*, 415 F. Supp. 3d at 970 (finding that the government's position that a material change of circumstances had occurred justifying re-detaining the petitioner increased the risk of erroneous deprivation without a hearing before a neutral adjudicator); *Vargas v. Jennings*, No. 20-cv-05785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, "absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ." *Guillermo M.R.*, 2025 WL 1983677, at *9; *see also Diaz v. Kaiser*, No. 3:25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (finding that the risk of erroneous deprivation of the petitioner's liberty interest in remaining out of custody would be lessened by a pre-detention hearing before an immigration judge).

/////

The court finds that a pre-detention hearing before an immigration judge is necessary here in order to reduce the risk of erroneous deprivation of petitioner's liberty interests. Therefore, the court concludes that the second *Eldridge* factor weighs in favor of granting petitioner the relief he preliminarily seeks.

As to the third *Eldridge* factor, petitioner argues that the government's interest in detaining him without a hearing is minimal because custody hearings in immigration court are routine and thus the fiscal burden on providing such a hearing would be "nonexistent." (Doc. No. 4 at 25–26.) Respondents argue that the government has a "strong interest in effectuating a final removal order" and therefore has an interest in achieving this objective without creating "additional fiscal and administrative hurdles through process that will provide no additional safeguards." (Doc. No. 13 at 7.) The court concludes, based on the parties' briefing before it at this time, that the costs associated with providing petitioner with a pre-detention hearing prior to any re-detention are low and that the government's interest in not providing such a hearing is also low. *See Singh*, 2025 WL 1918679, at *8 ("[T]he government's interest in detaining petitioner without a hearing is low. In immigration court, custody hearings are routine and impose a minimal cost.") (internal quotation marks and citations omitted); *Garcia*, 2025 WL 1927596, at *5 ("[T]he Court finds the Respondents' interest in placing Petitioner in detention without a hearing is low. The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case."); *Guillermo M.R.*, 2025 WL 1983677, at *9 ("Respondents characterized Petitioner's requested relief as an 'unprecedented' pre-arrest bond hearing[.] . . . However, the concept that an individual who is not subject to detention may request custody redetermination from an IJ is not novel. . . . Courts in this district have also regularly required pre-arrest hearings pursuant to the due process clause."). The court therefore concludes that consideration of this factor is, at best, neutral for the government.

Because petitioner has demonstrated that he is likely to succeed in showing that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring a pre-detention hearing before an immigration judge, and that

/////

the governmental burden in providing such procedure is quite minimal, the court concludes that consideration of the *Eldridge* factors weighs in favor of granting petitioner's requested relief.

**B. Irreparable Harm**

Petitioner argues that he will suffer irreparable harm from his continued detention and deprivation of his constitutional rights to due process in the absence of the granting of the requested injunctive relief. (Doc. No. 4 at 32–34.) Respondents concede that, should a plaintiff demonstrate a significant likelihood of success on the merits of his constitutional claim, the alleged constitutional infringement will likely, considered alone, constitute irreparable harm. (Doc. No. 13 at 9.) However, respondents claim without citation to authority that petitioner cannot establish any likelihood of irreparable harm regarding his re-arrest or deportation to a third country because those events have not yet occurred. (*Id.*)

"[U]nlawful detention certainly constitutes extreme or very serious damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999 (internal quotation marks omitted). Likewise, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Above, the court has concluded above that petitioner will likely succeed on his claim that his continued detention is unlawful. The court therefore also concludes that petitioner has demonstrated irreparable harm as to that detention.

**C. Balance of Equities and Public Interest**

Petitioner argues that the last two *Winter* factors—the balance of equities and public interest—favor the granting of his motion for temporary restraining order. (Doc. No. 4 at 34–35.) He contends that a violation of constitutional rights through indefinite detention would cause immense harm to him whereas the burden on the government in releasing him would be minimal. (*Id.*) Respondents assert that the government has a strong interest in enforcing immigration laws and that this interest is particularly strong where, as here, petitioner is subject to a final order of removal. (Doc. No. 13 at 9.)

/////

The consideration of the balance of equities and the public interest in an injunction merge "[w]hen the government is a party[.]" *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, the public has a strong interest in upholding procedural protections against unlawful detention." *Hoac*, 2025 WL 1993771, at *6 (internal quotation marks omitted) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4). Petitioner has demonstrated that he will likely succeed on the merits of his unlawful re-detention claim for the multiple reasons explained above. Petitioner had been on supervised release for seven years prior to his re-detention on June 3, 2025, and respondents do not argue that he failed to comply with the terms of his release during that time. Therefore, the court concludes that consideration of these last two *Winter* factors also favor granting petitioner's motion for temporary restraining order.

**D. Status Quo**

Finally, respondents contend that granting petitioner's request for a temporary restraining order would amount to an ultimate determination of the merits. (Doc. No. 13 at 3–4.) In particular, respondents argue that in seeking his release from detention and prohibition against re-detention petitioner is seeking the same relief as sought in his underlying habeas petition. (*Id.*) In reply, petitioner argues that he is merely seeking a return to the *status quo* prior to the commencement of this litigation. (Doc. No. 14 at 6–7.) He maintains that he had been on supervised release for seven years and that maintain the appropriate *status quo* would return him to that state. (*Id.*)

The court finds the government's argument on this point to be wholly unpersuasive. "The status quo *ante litem* is the last uncontested status which preceded the pending controversy." *Hoac*, 2025 WL 1993771, at *7 (internal quotation marks and brackets omitted) (quoting *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). Because petitioner challenges his current detention, the last uncontested status of petitioner was on June 3, 2025 prior to his re-detention. (Doc. No. 1-1 at ¶ 9.) The court possesses the authority to release petitioner in order to preserve that *status quo*. *Hoac*, 2025 WL 1993771, at *7 (collecting cases).

## CONCLUSION

For the reasons above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 4) is GRANTED in part as follows:
   a. Respondents are ORDERED to immediately release petitioner from respondents' custody;
   b. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge;
   c. Petitioner's request for a temporary restraining order enjoining respondents from removing him to a third country without notice and an opportunity to be heard is DENIED without prejudice to a renewed motion for temporary restraining order if such issue becomes ripe for review; and
2. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order; and,
3. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: **August 20, 2025**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE